COMMONWEALTH *v*. NATHAN DUNN.

THIS case was one of much importance to the public, because it was among the first, if not the very first instance in the state, in which threats and plans were systematically made and adopted, for the avowed purpose of extorting money from the accused, through fear of a prosecution for an unnatural crime.

After the several hearings, and the argument of the learned counsel; on the 10th of November, 1841, the RECORDER gave the following opinion in the case.

On the morning of the 6th of November, warrants were issued for the arrest of Nathan Dunn and of Lewis V. Curry, at the instance of the Attorney-general. The first on a charge of assault and battery, with intent to commit an unnatural crime. The latter with having comitted perjury before alderman Griscom, in swearing, on taking out a warrant against the defendant, that it was not Nathan Dunn of the Chinese Museum, but another Nathan Dunn, who lived down town, whom he charged with the offence, when, subsequently before alderman Davis, he swore that it was Nathan Dunn of the Chinese Museum.

The Attorney-general having been informed, on the night previous, that the warrants referred to, had been issued by the said aldermen—that the first had not been returned, and the last, before alderman Davis, charging the commission by the defendant, of the crime of sodo-

my, had beeen disposed of, and the prosecution stopped by the payment of a sum of money to the prosecutor, Curry, by Dunn; deemed it his duty to the community and to the laws, to make an investigation of all the circumstances attending a transaction so revolting, and required the arrest of the parties concerned, that the truth of the charge might be ascertained, and the defendant brought to trial, or the motives of those making it, be exposed and punished.

On Monday, November 8, Mr. Dunn surrendered himself, having heard as he stated, that I had issued a warrant for him, and desired a full investigation of the whole case. Mr. Curry was arrested, and in default of bail committed. Accordingly at 5 P. M. of the same day, all the parties appeared before me; the commonwealth represented by the *Attorney-general,* together with his assistant, *Mr. Scott; H. Hubbell* for the prosecutor; and *William M. Meredith & Joseph R. Ingersoll, esqrs.,* for Mr. Dunn.

Lewis V. Curry the prosecutor, was examined as to the entire circumstances of the case. It appears from his testimony, that some six years ago, in the pit of the Walnut street theatre, he first knew a man who, a year afterwards, he learned was Mr. Dunn. The detail of the alleged transaction between the parties, is far too gross for even a recital. The witness makes no charge other than an assault and battery, with an intent to commit an unnatural crime. No definite period is fixed other than some year or eighteen months ago. No place but the public streets, between the hours of 8 and 10 o'clock. The encounters were had by casually meeting in the street, and no person was mentioned as being a

1*

witness to any of these occurrences, but Mr. Dorrance, who it was alleged, some year or eighteen months ago, in Spruce street near Broad, met the defendant and prosecutor walking; and it was farther stated on this occasion, Mr. D. stopped and spoke to Mr. Dorrance, and again joined prosecutor, when he solicited him to allow the perpetration of the crime.

The other instance spoken of was at Mount Holly last summer, but neither the day was named nor the month. Even there, nothing more is alleged than a request, on the part of the defendant, to permit him to commit the act. This is not cognizable here. Unfortunately for the prosecutor, the only time when he asserts on oath, that corroborative testimony can be adduced to support the allegation, viz. when Mr. Dorrance met the parties as already stated, it appears from the evidence of Mr. D. himself, that the statement is "*perfectly untrue.*"

It would be unnecessary to allude to any other portion of the prosecutor's testimony, as the only part calculated to criminate the defendant, has been already collated from the mass of his incoherent, contradictory and disgusting story. The weight of credence to be attached to the whole, can be better decided, when the only statement which is alleged to be susceptible of proof, is plainly and positively contradicted by a witness of irreproachable character. It does appear a matter of surprise, that if the crime as charged, was committed, or attempted even to be perpetrated, and that, too, during the space of six years, in the public streets of so populous a city as Philadelphia, that some one witness could not be produced to support the prosecutor. But

farther than this, so vague was the notion of what charge Curry intended to bring, that on the 25th of October, he made oath before alderman Griscom, that Nathan Dunn, not proprietor of the Chinese Museum, but some other Nathan Dunn, who lived down town, had made a violent assault and battery on him in June last, with intent to commit b——y; and on the 29th he charges Nathan Dunn, proprietor of the Chinese Museum, with committing s——y on him, as appears by the docket of alderman Davis, which was produced and offered in evidence. Both the statements being under the sanctity an oath enjoins, and both being false, as appears by his testimony before me, there can be but little doubt as to the nature, and end, and purpose of the accusation.

Abel B. Sheppard was sworn, to support the case of the commonwealth. From the testimony of this person, it appears that on many nights some three years ago, he walked with Curry the prosecutor—that once he met a man in Spruce street, and that he (Curry) joined him and walked with him, and afterwards joined witness, after he (witness) had followed them some squares. He did not know the person whom Curry joined, and should never have known him, had not Curry asked the witness (Sheppard) to appear against Mr. D.; whereupon he said no, he could not; he did not know for what he must appear against him. It was then that Curry gave some intimation of the service he wished the witness (Sheppard) to render him. Sheppard refused to comply with the request, but frequently thereafter, at the instance and request of Curry, called on Mr. Dunn, "on private business," which private business was to inform Dunn that he had been asked to be a witness against

him, hinting at the time, at the nature of the charge. This witness proves nothing but a conspiracy to extort money from Mr. Dunn; for the sequel proves that $1400 was obtained by the counsel of Curry, from Mr. Dunn, on the charges thus made and thus substantiated, under the colour of law.

Mr. William G. Smith, a member of the bar, in his testimony stated that Curry had made offers to him, to enrich himself by aiding, in his professional character, the plans of Curry and his confederates. But Mr. Smith, with that caution which should govern all professional gentlemen, in undertaking such a cause as this appears to be, promptly refused. Mr. Smith very properly concluded, that his professional privilege did not operate to prevent his stating his knowledge of the transaction.

From the testimony of Levin H. Smith, the officer who was directed by one of the counsel of Mr. Curry, to hand a "note of invitation to Mr. Dunn, and if he would not come to his office, then to serve the warrant issued by alderman Griscom," it appears, that after Mr. Dunn had been at the office of the said counsel, he departed, and was seen by Mr. Smith at the steamboat landing, where he told Mr. Smith that he was going to New York; that he, Mr. Smith, went forthwith to the said counsel, and informed him where D. was. He was then told by the counsel that he would have no more to do with the business; that Curry had told alderman Griscom a lie, and advised Smith not to arrest Mr. Dunn, as it would get both into trouble.

Dr. Bunting was examined, but stated nothing material to the matter before me.

Alderman Griscom was next examined, and he stated

that Curry came to his office on the 25th of October, and handed him a note from his counsel, asking a warrant for Nathan Dunn, for an assault and battery with intent to commit an unnatural crime; that he administered the oath, and asked him to state the circumstances, which he appeared reluctant to do, saying that the note of his counsel was sufficient, which the alderman very properly said was not of itself satisfactory. The alderman then said interrogatively, " It is not our Nathan Dunn of the Chinese Museum?" to which Curry replied, " No, it is not, it is another man of the same name, who lives down town." After some other queries, the warrant was given to Curry, backed as required, in the note of Curry's counsel, authorizing Levin H. Smith to execute it. This is the warrant which it is supposed was intended to be used, in order to force the attendance of Mr. Dunn at the office of the prosecutor's counsel. Mr. Griscom farther states that the whole of the prosecutor's testimony, recounting the proceedings before him as to the issuing of the warrant, is false.

Alderman Davis stated that, on the 29th, Curry came before him and took out a warrant for Nathan Dunn of the Chinese Museum; that he was arrested and taken to the office of an attorney, and then to the office of the alderman; that, after being brought in, the counsel for the prosecutor and defendant had leave to confer (which conference took place in the street in front of this office), and in a short time came in and requested the complaint to be dismissed. The alderman asked for bail for a farther hearing, but the counsel said it was settled, and, no evidence being produced, he was given in charge of the officer, and the warrant never returned. This set-

tlement appears to have been effected, from Curry's statement, by Mr. Dunn paying $ 1000 to him.

Nothing more is heard of the case, until ten days or two weeks after this last proceeding, when it came before me as above stated. These were all the witnesses examined on the part of the commonwealth, who were in attendance, and I believe I have given a clear statement of all the facts and features in this case, necessary to aid me in forming an impartial judgment.

The duty of a magistrate, when sitting to investigate any charge made against a citizen, is to seek for the truth; above all, then, it is his imperative duty, when a crime is attempted to be fastened on a member of the community, so heinous in its nature, so destructive of the morals, so revolting to the feelings, and so worthy of the severest punishment, as the one alleged in this case, to be satisfied with nothing but the plainest proof.

The law is a shield to the innocent, and a terror to the guilty; its administration, to be respected, must be impartial, and should be so carefully guarded, that under its ægis no species of injustice could be nurtured. The liberty and the character of every citizen are too dear and valuable to be trifled with, especially under the sanction of legal process.

The opinion I have deliberately formed of this case, after the most serious consideration, and deeply imbued with the responsibility which I assume, and every magistrate ought to feel, in the discharge of so important a duty, is, that a more unholy, unjust, unfounded conspiracy, hardly ever existed in this metropolis: a conspiracy founded in depravity the most abandoned—in per-

jury the most positive, gross and unblushing—and for ends and purposes the most clear and abominable.

To sustain such charges against any man in a moral community, like those of which Mr. Dunn is accused, the proof should be indisputable; to justify the binding over of a citizen of honest character on such accusations, the evidence should be unimpeachable. The case before me comes steeped in perjury, marked with contradictions and impossibilities, and wholly unsustained by a shadow of proof.

To guard the innocent citizen, and also to protect even the accused, unless on clear and positive probable cause, is my duty, and it will be performed with a single eye to impartial, substantial justice.

While I consider Mr. Dunn has acted in this matter, with a weakness, a morbid sensitiveness, and want of that knowledge of human nature, which nothing but an acknowledged benevolence can justify or excuse, in yielding to these extortions, I am free to say, that there is no evidence, either circumstantial or parol, which would justify me in holding him to answer the charge preferred against him; and as an act of justice to the community, I feel it to be my duty to bind over Curry and Sheppard for a conspiracy to extort money from Nathan Dunn, and individually to answer for the perjury they have committed.

This course is the result of a sense of duty, to act contrary to which would be to violate every attribute of the judicial character; to do less than I have done, would be to say perjury is truth, that innocence has no protection; that to assert the commission of a crime, is

to prove it; and that the intent of the laws is to enable the wicked to prosper in their designs unchecked.

This should not be permitted by one who holds a judicial station, and acts in that firm, impartial and independent manner which it enjoins.

*Nathan Dunn is discharged.*